## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

**AARON MAGEE,**                                    CASE NO. 2:23 CV 12406

     Petitioner,

     v.                                          JUDGE JAMES R. KNEPP II

**MELINDA BRAMAN, WARDEN,**[1]

     Defendant.                              **MEMORANDUM OPINION AND**
                                   **ORDER**

### INTRODUCTION

*Pro se* Petitioner Aaron Magee ("Petitioner"), a prisoner in state custody, filed a Petition

seeking a writ of habeas corpus under 28 U.S.C. § 2254 ("Petition"). (Doc. 1). Currently pending

is Respondent Warden Melinda Braman's Motion to Dismiss the Petition as untimely. (Doc. 10).

Petitioner opposes. (Doc. 14). The Court[2] has jurisdiction over the Petition under 28 U.S.C. §

2254(a). For the reasons set forth below, the Court grants in part and denies in part Respondent's

Motion to Dismiss.

### BACKGROUND

On January 18, 2005, a jury found Petitioner guilty of first-degree felony murder in

violation of Michigan Comp. Laws § 750.316(1)(b), armed robbery in violation of Michigan

Comp. Laws § 750.529, felon in possession of a firearm in violation of Michigan Comp. Laws §

750.224f, and possession of a firearm during the commission of a felony in violation of

---

1. Petitioner is incarcerated at the Richard A. Handlon Correctional Facility; Melinda Braman is the current Warden of that facility and thus the appropriate respondent in this action. *See* Rule 2(a), Rules Governing 2254 Cases; 28 U.S.C. § 2254. Accordingly, the Court orders the docket modified to reflect Petitioner's current custodian.
2. This matter is before this Court based on the Sixth Circuit's designation of the undersigned to hear this case. *See* Doc. 4.

Michigan Comp. Laws § 750.227b. *See* Doc. 11-1; *People v. Magee*, 2006 WL 2739358 (Mich. Ct. App.). "The trial court vacated the armed robbery conviction on double jeopardy grounds and sentenced defendant to a two-year term of imprisonment for the felony-firearm conviction, to be followed by concurrent terms of life imprisonment for the first-degree murder conviction and two to five years for the felon in possession conviction." *Magee*, 2006 WL 2739358, at *1.

Petitioner filed a direct appeal to the Michigan Court of Appeals, and on September 26, 2006, the appellate court affirmed his convictions. *See id.* Petitioner then filed an application for leave to appeal to the Michigan Supreme Court; the Supreme Court denied his application for leave on March 26, 2007, *People v. Magee*, 728 N.W.2d 430 (Mich. 2007) (table), and his application for reconsideration on May 30, 2007, *People v. Magee*, 731 N.W.2d 696 (Mich. 2007) (table).

On December 5, 2011, the Michigan State Police forensic laboratory issued a report after retesting the ballistics evidence (five fired bullets) in Petitioner's case. (Doc. 11-17, at 126-27). The report concluded that "[u]pon microscopic examination, item #'s 1 and 4 were identified as having been fired from the same firearm. Item #'s 2, 3, and 5 lacked sufficient individual matching characteristics for a positive identification." *Id.* at 126.

On May 10, 2019, Petitioner filed a motion for relief from judgment with the trial court. (Doc. 11-9). The prosecution opposed on August 5, 2019. (Doc. 11-10). On March 15, 2021, the trial court denied Petitioner's motion. (Doc. 11-17, at 138-43).

On November 1, 2021, Petitioner filed a motion with the trial court to reissue the denial of the motion for relief from judgment; therein he claimed he had not received a copy at the time of filing. (Doc. 11-13). The trial court denied the motion on December 6, 2021. (Doc. 11-14).

On September 6, 2022, Petitioner filed a delayed application for leave to appeal with the Michigan Court of Appeals. (Doc. 11-17, at 2-13). On September 14, 2022, the Michigan Court of Appeals dismissed the appeal for lack of jurisdiction, finding it untimely under Michigan Court Rule 7.205(A)(2). (Doc. 11-17, at 1).

On September 6, 2023, Petitioner signed[3] the habeas petition currently before the Court; it was postmarked on September 18, 2023, and filed with the Court on September 21, 2023. *See* Doc. 1, at 1, 48, 119. The Petition raises three grounds for relief:

1. Petitioner is entitled to relief from judgment where his trial record reflects the absence of the verbatim swearing of the jury oaths[.] Alternatively, Petitioner was denied the effective assistance of appellate counsel for failure to raise this issue on direct appeal in violation of U.S. Const. Ams. VI, and XIV.

2. Defendant is entitled to relief from judgment, where there is new evidence that the Detroit Police Department's Crime Laboratory evidence was not reliable and that the ballistic evidence was materially false, a new trial should be ordered[.] Alternatively, Defendant was denied the effective assistance of trial counsel by the cumulative effect of trial counsels' errors under the *Strickland* standard, U.S. Const. Ams. VI, XIV.

3. Petitioner was denied due process where his appellate counsel was ineffective on appeal as of right, contrary to the guarantee of effective assistance of counsel on appeal[.] An evidentiary hearing should be held on both claims of ineffective assistance of trial and appellate counsel[], and a new trial ordered, U.S. Const. Ams. VI, and XIV.

*Id.* at 2.

---

3. Pursuant to the prison mailbox rule, a *pro se* prisoner's pleading "is deemed filed when the inmate gives the document to prison officials to be mailed." *In re: Prison Litig. Reform Act*, 105 F.3d 1131, 1132 (6th Cir. 1997) (citing *Houston v. Lack*, 487 U.S. 266, 270 (1988)). The prisoner bears the burden to show that he delivered his filing in compliance with the prison mailbox rule. *See Leavy v. Hutchison*, 952 F.3d 830, 832 (6th Cir. 2020); *United States v. Smotherman*, 838 F.3d 736, 738-39 (6th Cir. 2016) (stating that inmates "always h[o]ld the burden of proving timeliness," under prison mailbox rule or otherwise). The Court need not resolve, for purposes of the present motion, the Petition filing date in the instant case.

**DISCUSSION**

Respondent contends the Petition must be dismissed as untimely because Petitioner failed to file it within the expiration of time for seeking direct review (in 2007) or upon the discovery of new evidence (in 2011). Petitioner responds that he was not aware of the evidence until 2019 and contends the Petition is therefore timely.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a one-year statute of limitations upon all petitions for a writ of habeas corpus under 28 U.S.C. § 2244(d)(1). Specifically, it provides:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).[4] The statute of limitations may be tolled statutorily by a properly filed motion for post-conviction review, 28 U.S.C. § 2244(d)(2), or equitably by the Court under limited circumstances.

---

4. Petitioner does not identify an impediment created by the State or seek the retroactive application of a recently recognized constitutional right or attempt to rely on these subsections.

4

Section 2244(d)(1)(A)

Respondent contends Petitioner's habeas petition is untimely under § 2244(d)(1)(A). Petitioner does not present any argument in response, but focuses his argument on subsection (d)(1)(D). Respondent is correct that the petition is untimely under (d)(1)(A).

Under § 2244(d)(1)(A), the one-year limitations period begins to run from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review[.]" 28 U.S.C. § 2244(d)(1)(A). A judgment is final when direct review concludes and the time to file a petition for a writ of certiorari with the United States Supreme Court expires. *Jimenez v. Quarterman*, 555 U.S. 113, 119 (2009) ("[F]inality of a state-court judgment is expressly defined by statute as 'the conclusion of direct review or the expiration of the time for seeking such review.'").

Here, Petitioner's conviction became final in 2007. The present Petition was filed in September 2023. Petitioner does not dispute that his challenge is untimely under § 2244(d)(1)(A), but instead relies on § 2244(d)(1)(D). *See* Doc. 14, at 7.

Section 2244(d)(1)(D)

Respondent next argues Petitioner's habeas petition is untimely under § 2244(d)(1)(D) because (1) "[t]he evidence is not new, and so it is doubtful that § 2244(d)(1)(D) is even applicable in this case[,]" (2) the evidence is cumulative of trial evidence; and (3) even if § 2244(d)(1)(D) is applicable, the petition is not timely as the evidence at issue dates to 2011 and Petitioner took no action before 2019. (Doc. 10, at 13-14). The Court summarizes the evidence at issue, and then takes each argument in turn.

The Michigan Appellate Court described the evidence presented at trial:

---

*See* 28 U.S.C. § 2244(d)(1)(B), (d)(1)(C). The Court therefore only addresses subsections (d)(1)(A) and (d)(1)(D) regarding the statute of limitations.

In this case, there was evidence that defendant participated in the offense along with codefendants Terrence Gaines and Tavaree Clark, and that defendant and Gaines both entered the victim's house intending to rob him while Clark stood by outside. Although Gaines testified that defendant shot the victim, the jury could have concluded that Gaines shot the victim and that he was attempting to blame defendant for the shooting. Moreover, although there was evidence that the victim sustained seven gunshot wounds, only five bullets were recovered. So the evidence did not exclude the possibility that both Gaines and defendant shot the victim. This evidence supported an aiding and abetting instruction.

*People v. Magee*, 2006 WL 2739358, at *2 (Mich. Ct. App.). At trial, evidence was presented that all five recovered bullets were fired from the same weapon. *See* Doc. 11-5, at 139 (January 11, 2005, trial transcript; testimony of Detroit Police Officer David Pauch).

On December 5, 2011, the Michigan State Police crime lab reexamined the five recovered fired bullets from Petitioner's case. *See* Doc. 11-17, at 126-27. The result was:

Item #'s 1 through 5 are consistent with being .38 class (.38/.357) caliber fired bullets exhibiting class rifling specifications of 8 lands and grooves with a right twist. These specifications are characteristic of .38 Special caliber firearms manufactured by Arminius, Burgo, Charter Arms, Cheyenne, Dickson, EIG, Liberty Arms, Omega, PIC, RG Ind., Rohm and Ruger; and .357 Magnum caliber firearms manufactured by Charter Arms, Rohm, Ruger and Weihrauch. However, no suspect firearm should be overlooked.

Upon microscopic examination, item #'s 1 and 4 were identified as having been fired from the same firearm. Item #'s 2, 3 and 5 lacked sufficient individual matching characteristic for a positive identification.

*Id.* at 126.

At the outset, although neither party separates Petitioner's grounds for relief in addressing the timeliness thereof, the Court is required to do so. Under § 2244(d)(1)(D), the one-year limitations period begins to run on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). The delay allowed by 28 U.S.C. § 2244(d)(1)(D) should be decided on a claim-by-claim basis, rather than with respect to all of the claims contained within a petition. *See Ege v.*

*Yukins*, 485 F.3d 364, 373-74 (6th Cir. 2007) (applying § 2244(d)(1)(D) to delay commencement of the limitations period only for the petitioner's due process claim, when the factual predicate of that claim was discovered at a later date than the factual predicate of the petitioner's other claim); *see also Pace v. DiGuglielmo*, 544 U.S. 408, 416, n.6 (2005) (noting that §§ 2244(d)(1)(B), (d)(1)(C), and (d)(1)(D) "require claim-by-claim consideration").

Grounds One and Three

Petitioner's first and third grounds for relief are not based on the 2011 lab report, and thus it cannot serve as the "factual predicate" for those grounds. Ground One asserts a claim related to the jury oaths administered at trial (and a related claim of ineffective assistance of appellate counsel for failure to raise this claim on direct appeal). Ground Three alleges ineffective assistance of appellate counsel on direct appeal. The Court therefore finds these two grounds barred by the statute of limitations and grants Respondent's motion to dismiss them.

Ground Two

In Ground Two, Petitioner makes several assertions including that materially false evidence was presented at trial, denying him his right to a fair trial, and the state trial court's ruling on his post-conviction motion violated clearly established federal law. (Doc. 1, at 28, 32-33). These claims appear to be, at least in part, based on the 2011 lab report.

First, Respondent argues "[t]he evidence is not new, and so it is doubtful that § 2244(d)(1)(D) is applicable in this case." (Doc. 10, at 13). The Court disagrees. The evidence upon which Petitioner relies—the 2011 lab report—did not exist at the time of his trial, and so the Court finds it is therefore newly discovered.

Second, Respondent argues the evidence presented is "cumulative" to that presented at trial. "Congress did not define 'factual predicate' as that term is used in § 2244(d)(1)(D). But

7

courts generally agree that 'a factual predicate consists only of the "vital facts" underlying the claim.'" *Ayers v. Ohio Dep't of Rehab. & Corr.*, 113 F.4th 665, 670 (6th Cir. 2024) (quoting *Rivas v. Fischer*, 687 F.3d 514, 535 (2d Cir. 2012)). "A fact is 'vital' if it is required for the habeas petition to overcome sua sponte dismissal." *Id.* "Accordingly, if new information is discovered that merely supports or strengthens a claim that could have been properly stated without the discovery, that information is not a 'factual predicate' for purposes of triggering the statute of limitations under § 2244(d)(1)(D)." *Rivas*, 687 F.3d at 535 (citation omitted).

Evidence presented by a habeas petitioner does not form a "vital fact" where it is "merely *cumulative* to the evidence *already presented by the defense at trial*." *Souter v. Jones*, 395 F.3d 577, 587 (6th Cir. 2005) (emphasis added). This Court must first determine whether the evidence the petitioner presents constitutes a "factual predicate" for his claims. *Ayers*, 113 F.4th at 670. Only after making that determination will a court ask when a petitioner could have discovered the factual predicate through the exercise of due diligence. *Id.*

In *Souter v. Jones*, the Sixth Circuit found evidence was cumulative where the petitioner attempted to introduce an affidavit from a former lab technician stating that a blood stain on a label of a bottle "provides very little evidentiary value because 43% of the American population has the same type of blood[,]" but the same lab technician had testified at trial that "both Ringler and Souter have type A blood and that he could not determine which one, or if someone else with type A blood, left the stain on the label." 395 F.3d 577, 587 (6th Cir. 2005). Therefore, the Sixth Circuit held the affidavit's statement "[could not] form the newly discovered factual predicate, which commences the statute of limitations period." *Id.*

Respondent argues the 2011 lab report is "cumulative of a fact already supported by the trial evidence[,]" and thus § 2244(d)(1)(D) is not applicable. (Doc. 10, at 14) (citing *Souter*, 395

8

F.3d at 587). This argument is based on the fact that the Michigan Court of Appeals stated: "although there was evidence that the victim sustained seven gunshot wounds, only five bullets were recovered" and so "the evidence did not exclude the possibility that both [a co-defendant] and defendant shot the victim." *Magee*, 2006 WL 2739358. That is, Respondent contends the lab report does not change the outcome based on the facts presented because under either ballistics interpretation, Petitioner could have been convicted. *See also* Doc. 10, at 13 (arguing that "[u]nder either" the trial evidence or the 2011 lab report "Magee is still guilty of murder."). But the Court finds these questions of materiality go to the merits of the Petition's claims, rather than its timeliness. Respondent may raise these arguments in its Answer/Return of Writ. The Court offers no opinion on the merits of the Petition at this time. Here, in contrast to *Souter*, upon which Respondent relies, evidence was presented at trial that all five bullets were fired from the same gun, and the retesting by the Michigan State Crime Lab found two bullets were fired from the same gun and three were inconclusive. This is different evidence. Petitioner's claim for relief appears to be based at least in part on allegations that the new evidence demonstrates the evidence presented at trial was false. *See* Doc. 1, at 36-42. Thus, the Court finds the 2011 lab report is not cumulative, and forms a "vital fact" underlying Petitioner's false evidence claim.

Third and finally, Respondent argues the lab report is dated December 5, 2011, "and so that is the triggering date" under § 2244(d)(1)(D) starting the one-year statute of limitations. (Doc. 10, at 14). Respondent further contends Petitioner's untimely 2019 motion for relief from judgment "did not toll or restart the statute of limitations" because it had already expired. *Id.* at 15. Respondent emphasizes that Petitioner "did nothing in his case after his direct appeal until 2019[.]" *Id.* at 15. Petitioner responds that he was unaware of the new evidence until 2019 and has been diligently pursuing his rights ever since he discovered it. *See* Doc. 14, at 7. Specifically,

he asserts "[t]he Detroit Conviction Integrity Unit, (CIU) sent [the testing results] to his attorney who subsequently never contacted him. Further, [P]etitioner did not learn of this crucial information until 2019." *Id.* Petitioner also cites a November 2021 COVID-19 infection that limited his movement within prison, and a February 2022 notice of extension of filing pursuant to Michigan Supreme Court Order 2022-2. *Id.* at 8. Respondent did not file a Reply and thus has not responded to these arguments for tolling.

Under § 2244(d)(1)(D), the one-year limitations period begins to run on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." That is, the date on which Petitioner discovered the evidence is not necessarily the date on which it "could have been discovered through the exercise of due diligence." *Id.* The Court is to consider "when a duly diligent person in [Petitioner's] circumstances would have discovered" the factual predicate for his ineffective-assistance claim. *DiCenzi v. Rose*, 452 F.3d 465, 470 (6th Cir. 2006) (quoting *Wims v. United States*, 225 F.3d 186, 190 (2d Cir. 2000)). This "does not require the maximum feasible diligence, only 'due,' or reasonable, diligence." *Id.* (quotation omitted). Petitioner bears the burden of proving that he exercised due diligence. *See id.* at 471.

The disputed question is when a reasonable individual in Petitioner's position would have discovered the 2011 lab report. Respondent assumes Petitioner should have discovered it at the time of its issuance; Petitioner asserts he did not become aware of it until 2019. Although the Court finds it difficult to determine on the current record whether Petitioner has established his burden regarding when reasonable diligence would have revealed the report (and questions the lack of details regarding how and precisely when he did), the Court is also reluctant to find that "due" or "reasonable" diligence would require an individual to actively seek out a lab report he

did not know existed. *Cf. DiCenzi*, 452 F.3d at 472 (remanding case to allow the district court "to determine when a defendant in DiCenzi's position, acting with due diligence for AEDPA statutory purposes, would have discovered his right to an appeal.").

Further, although not so argued by Respondent, the Court questions whether the September 2023 Petition is timely even if Petitioner is entitled to tolling and a 2019 start date is used. *See Taylor v. Palmer*, 623 F. App'x 783, 786 n.3 (6th Cir. 2015) (explaining that district courts "are permitted to consider the timeliness of a prisoner's habeas petition *sua sponte*"); *Day v. McDonough*, 547 U.S. 198, 209 (2006) ("[D]istrict courts are permitted, but not obliged, to consider, *sua sponte*, the timeliness of a state prisoner's habeas petition."). District courts are "not required to doublecheck the State's math." *Day*, 547 U.S. at 209-10. But "if a judge does detect a clear computation error, no Rule, statute, or constitutional provision commands the judge to suppress that knowledge." *Id.* at 210. However, while a federal court may raise AEDPA's statute of limitations *sua sponte*, "before acting on its own initiative, a court must accord the parties fair notice and an opportunity to present their positions." *Id.* The Court must also "assure itself that the petitioner is not significantly prejudiced by the delayed focus on the limitation issue, and 'determine whether the interests of justice would be better served' by addressing the merits or by dismissing the petition as time barred." *Id.* (quoting *Granberry v. Greer*, 481 U.S. 129, 136 (1987)).

Because expiration of the statute of limitations does not pose a jurisdictional bar to habeas review, the Court is not required to address the issue before considering the merits of the Petition. *See Moss v. Miniard*, 62 F.4th 1002, 1010 (6th Cir. 2023); *Trussell v. Bowersox*, 447 F.3d 588, 590 (8th Cir. 2006) (citing *Day*, 547 U.S. at 205); *Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 429, n.2 (6th Cir. 2006) (declining to address statute-of-limitations defense

11

on appeal in part because AEDPA's statute of limitations is not jurisdictional). If resolution on the merits is more straightforward than resolution on the limitations issue, a Court may consider the merits of the petition first. *See, e.g.*, *Trussell*, 447 F.3d at 590 ("[B]ecause neither the statute of limitations nor procedural default constitutes a jurisdictional bar to our review, we shall, in the interest of judicial economy, proceed to the merits of Trussell's petition.") (internal citations omitted); *Moss*, 62 F.4th at 1010 ("[B]ecause the statute of limitations does not present a jurisdictional bar to habeas review, and because we hold that Moss is not entitled to habeas relief for the reasons discussed below, we decline to determine on appeal whether the district court properly tolled Moss's petition."); *Kelley v. Burton*, 2023 WL 2755654, at *3 n.3 (6th Cir.) ("The statute of limitations does not present a jurisdictional bar to habeas review, and we decline to determine the issue because Kelley is not entitled to habeas relief for the reasons discussed below.").

In the interests of both thoroughness and judicial economy, and on the arguments presently before the Court, the Court will deny without prejudice Respondent's motion to dismiss on statute of limitations grounds. The Court will therefore Order Respondent to file an Answer/Return of Writ to address the remaining ground for relief—Ground Two. Respondent's Answer may address any additional statute of limitations issues in addition to the merits of the claim. Petitioner's Reply/Traverse may address, in addition to the merits, any basis for tolling. To the extent Petitioner's Reply/Traverse raises new issues, the Court will permit Respondent to file a Sur-Reply addressing only those new issues. Upon full briefing, the Court will determine whether the claim is more appropriate resolved on statute of limitations grounds or on the merits.

### CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that Respondent's Motion to Dismiss (Doc. 10) be, and the same hereby is, GRANTED IN PART and DENIED IN PART as set forth herein; and it is

FURTHER ORDERED that Respondent file an Answer/Return of Writ as to the remaining Ground of the Petition (Ground Two) on or before **April 29, 2025**; Petitioner's Reply/Traverse due **30 days** thereafter; Respondent's Sur-Reply, if any, due **14 days** thereafter, and the Court

FURTHER CERTIFIES, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

 s/ *James R. Knepp II*
UNITED STATES DISTRICT JUDGE

Dated: March 4, 2025