## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

**AARON MAGEE,**                                      CASE NO. 2:23 CV 12406

      Petitioner,

      v.                                              JUDGE JAMES R. KNEPP II

**JEFF TANNER, WARDEN,[1]**

      Respondent.                         **MEMORANDUM OPINION AND ORDER**

### INTRODUCTION

*Pro se* Petitioner Aaron Magee ("Petitioner"), a prisoner in state custody, filed a Petition seeking a writ of habeas corpus under 28 U.S.C. § 2254 ("Petition"). (Doc. 1). Following this Court's prior Order (Doc. 17) partially granting and partially denying Respondent's Motion to Dismiss the Petition as untimely (Doc. 10), Respondent filed a Response in Opposition to the Petition (Doc. 18), and Petitioner filed a Reply/Traverse (Doc. 20). The Court[2] has jurisdiction over the Petition under 28 U.S.C. § 2254(a). For the reasons set forth below, the Court dismisses the Petition as time-barred.

### BACKGROUND

Factual Background

For the purposes of federal habeas review of state court decisions, findings of fact made by a state court are presumed correct and can only be contravened if the habeas petitioner shows,

---

1. Petitioner is incarcerated at the Macomb Correctional Facility; Jeff Tanner is the current Warden of that facility and thus the appropriate respondent in this action. *See* Rule 2(a), Rules Governing Section 2254 Cases; 28 U.S.C. § 2254. Accordingly, the Court orders the docket modified to reflect Petitioner's current custodian.
2. This matter is before this Court based on the Sixth Circuit's designation of the undersigned to hear this case. *See* Doc. 4.

by clear and convincing evidence, such findings were erroneous. 28 U.S.C. § 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). This presumption of correctness applies to factual findings made by a state court of appeals based on the state trial court record. *Mitzel*, 267 F.3d at 530. The Michigan Appellate Court described the evidence presented at Petitioner's trial:

> In this case, there was evidence that defendant participated in the offense along with codefendants Terrence Gaines and Tavaree Clark, and that defendant and Gaines both entered the victim's house intending to rob him while Clark stood by outside. Although Gaines testified that defendant shot the victim, the jury could have concluded that Gaines shot the victim and that he was attempting to blame defendant for the shooting. Moreover, although there was evidence that the victim sustained seven gunshot wounds, only five bullets were recovered. So the evidence did not exclude the possibility that both Gaines and defendant shot the victim. This evidence supported an aiding and abetting instruction.

*People v. Magee*, 2006 WL 2739358, at *2 (Mich. Ct. App.).

Procedural Background

*Trial Court Proceedings*

On January 18, 2005, a jury found Petitioner guilty of first-degree felony murder in violation of Michigan Compiled Laws § 750.316(1)(b), armed robbery in violation of Michigan Comp. Laws § 750.529, felon in possession of a firearm in violation of Michigan Comp. Laws § 750.224f, and possession of a firearm during the commission of a felony in violation of Michigan Comp. Laws § 750.227b. *See* Doc. 11-1; *Magee*, 2006 WL 2739358, at *1. "The trial court vacated the armed robbery conviction on double jeopardy grounds and sentenced defendant to a two-year term of imprisonment for the felony-firearm conviction, to be followed by

concurrent terms of life imprisonment for the first-degree murder conviction and two to five years for the felon in possession conviction." *Magee*, 2006 WL 2739358, at *1.[3]

*Direct Appeal Proceedings*

Petitioner filed a counseled direct appeal to the Michigan Court of Appeals. Therein, he raised four claims of error:

1.   Was Defendant deprived of his Ams V and XIV rights of due process when irrelevant and unfair evidence was introduced, namely, evidence of defendant's status as a convicted felon, notwithstanding the charged crime?

2.   Was Defendant deprived of his Ams V and XIV rights of due process when evidence of flight was introduced by the Prosecutor?

3.   Was Defendant deprived of his Ams V and XIV rights of due process when witness Terrance Gaines was permitted to inform the jury that he, a co-participant in Defendant's crime, had pled guilty as had Tavaree Clark?

4.   Was Defendant deprived of his Ams V and XIV rights of due process when the Court, over defense objections, instructed on aiding and abetting?

(Doc. 11-15, at 158). Petitioner also filed his own brief on appeal, in which he raised the following additional claims of error:

I.   Defendant was denied effective assistance of counsel as it is guaranteed under the VI Amendment, and due process as it is guaranteed under the V and XIV Amendments when counsel failed to allow the trial court to give the necessarily and lesser included instruction of second-degree murder to the charged offense of felony murder.

II.   Trial court violated Defendant's right to due process under the V and XIV Amendment when trial court abused it[]s discretion and failed to give the necessarily included instruction of second-degree murder as a lesser included offense of the charged crime of felony murder.

---

3. Respondent notes that, in 2008, the Michigan Supreme Court reversed a prior decision holding convictions for felony murder and the predicate felony constituted double jeopardy. *See* Doc. 18, at 11 (citing *People v. Ream*, 750 N.W.2d 536 (Mich. 2008)).

> III.     Defendant received ineffective assistance of counsel, during critical stages as guaranteed under Ams VI during trial, when trial counsel failed to provide a defense or case during the prosecution of a capital crime, thus preventing the jury from deliberating or considering what Defendant's defense would consist of.

*Id.* at 71 (capitalization altered).

On September 26, 2006, the appellate court affirmed Petitioner's convictions. *See id.* at 20-23; *Magee*, 2006 WL 2739358. It also subsequently denied his Motion for Reconsideration on October 25, 2006. (Doc. 11-15, at 5).

Petitioner then filed an application for leave to appeal to the Michigan Supreme Court, raising the same issues raised to the appellate court plus one additional claim:

> Defendant was denied the effective assistance of appellate counsel in violation of his VI Ams right under the state and federal Constitution when appellate counsel failed to raise the issues supported by the record that where [sic] both meritorious and clear violations of state and federal jurisprudence.

*See* Doc. 19-1, at 7-15. On March 26, 2007, the court denied Petitioner's application for leave to appeal because it was "not persuaded that the questions presented should be reviewed by [that] Court." *People v. Magee*, 728 N.W.2d 430 (Mich. 2007) (table). The Michigan Supreme Court also denied Petitioner's subsequent motion for reconsideration on May 30, 2007. *People v. Magee*, 731 N.W.2d 696 (Mich. 2007) (table).

*2011 Retesting*

On December 5, 2011, the Michigan State Police forensic laboratory issued a report after retesting the ballistics evidence (five fired bullets) in Petitioner's case. (Doc. 11-17, at 126-27). The report concluded that "[u]pon microscopic examination, item #'s 1 and 4 were identified as having been fired from the same firearm. Item #'s 2, 3, and 5 lacked sufficient individual matching characteristics for a positive identification." *Id.* at 126.

*2019 Motion for Relief from Judgment*

On May 10, 2019, Petitioner filed a motion for relief from judgment with the trial court. (Doc. 11-9). Therein, he raised the following claims:

I.      Is Defendant entitled to relief from judgment where his trial record reflects the absence of the verbatim swearing of the jury oaths?

Was Defendant denied the effective assistance of appellate counsel for failure to raise this issue on direct appeal?

II.     Is Defendant entitled to relief from judgment where there is new evidence that the Detroit Police Department's crime laboratory evidence was not reliable and that the ballistic evidence was materially false?

Should a new trial be ordered?

Was Defendant denied the effective assistance of trial counsel by the cumulative effect of trial counsel's errors under the *Strickland* standard?

III.    Was Defendant denied due process whe[r]e his appellate counsel was ineffective on appeal of right[] contrary to the guarantee of effective assistance of counsel on appeal?

Should an evidentiary hearing be held on both claims of ineffective assistance of trial and appellate counsel and a new trial ordered?

(Doc. 11-9, at 3) (capitalization and typeface altered). The State opposed on August 5, 2019. (Doc. 11-10, at 1-18). Petitioner filed a "Motion to Proceed for Ruling" on September 4, 2019. (Doc. 11-11) (capitalization altered). On March 15, 2021, the trial court denied Petitioner's motion. (Doc. 11-17, at 138-43).

On November 1, 2021, Petitioner filed a motion with the trial court to reissue its denial of the motion for relief from judgment; therein he claimed he had not received a copy at the time of filing. (Doc. 11-13). The trial court denied the motion on December 6, 2021. (Doc. 11-14).

On September 6, 2022, Petitioner filed a delayed application for leave to appeal with the Michigan Court of Appeals raising the same claims he raised to the trial court. (Doc. 11-17, at

5

31-32). On September 14, 2022, the Michigan Court of Appeals dismissed Petitioner's

application for leave to appeal for lack of jurisdiction, finding it untimely under Michigan Court

Rule 7.205(A)(2). *Id.* at 1. On October 19, 2022, Petitioner filed an application for leave to

appeal with the Michigan Supreme Court. (Doc. 11-16, at 2-11). The Michigan Supreme Court

denied leave on January 31, 2023, stating it was "not persuaded that the questions presented

should be reviewed by [that] Court." *People v. Magee*, 984 N.W.2d 192 (Mich. 2023) (table).

*Habeas Petition*

On September 6, 2023, Petitioner signed[4] the habeas petition currently before the Court;

it was postmarked on September 18, 2023, and filed with the Court on September 21, 2023. *See*

Doc. 1, at 1, 48, 119. The Petition raised three grounds for relief:

1. Petitioner is entitled to relief from judgment where his trial record reflects the absence of the verbatim swearing of the jury oaths[.] Alternatively, Petitioner was denied the effective assistance of appellate counsel for failure to raise this issue on direct appeal in violation of U.S. Const. Ams. VI, and XIV.

2. Defendant is entitled to relief from judgment, where there is new evidence that the Detroit Police Department's Crime Laboratory evidence was not reliable and that the ballistic evidence was materially false, a new trial should be ordered[.] Alternatively, Defendant was denied the effective assistance of trial counsel by the cumulative effect of trial counsel's errors under the *Strickland* standard, U.S. Const. Ams. VI, XIV.

3. Petitioner was denied due process where his appellate counsel was ineffective on appeal of right, contrary to the guarantee of effective assistance of counsel on appeal[.] An evidentiary hearing should be held on both claims of ineffective assistance of trial and appellate counsel[], and a new trial ordered, U.S. Const. Ams. VI, and XIV.

---

4. Pursuant to the prison mailbox rule, a *pro se* prisoner's pleading "is deemed filed when the inmate gives the document to prison officials to be mailed." *In re: Prison Litig. Reform Act*, 105 F.3d 1131, 1132 (6th Cir. 1997) (citing *Houston v. Lack*, 487 U.S. 266, 270 (1988)). The prisoner bears the burden to show he delivered his filing in compliance with the prison mailbox rule. *See Leavy v. Hutchison*, 952 F.3d 830, 832 (6th Cir. 2020); *United States v. Smotherman*, 838 F.3d 736, 738-39 (6th Cir. 2016) (stating inmates "always h[o]ld the burden of proving timeliness," under prison mailbox rule or otherwise). Respondent uses the filing date as September 6, 2023 (Doc. 18, at 23), and the Court does the same.

*Id.* at 2 (capitalization and typeface altered).

Respondent originally filed a motion to dismiss the Petition, arguing it was untimely. (Doc. 10). This Court granted the motion as to Grounds One and Three but denied it without prejudice as to Ground Two. (Doc. 17).

**DISCUSSION**

Addressing the only remaining Ground in the Petition, Respondent contends it must also be dismissed because even using the May 10, 2019, date on which Petitioner filed a motion for relief from judgment with the trial court as the statute of limitations start date, it is still untimely. Respondent alternatively argues this claim is procedurally defaulted and meritless. Petitioner responds that the Court should consider the merits of his case and allow him to conduct discovery. (Doc. 20). He further contends he exercised due diligence and equitable tolling applies. *Id.* For the reasons set forth below, the Court finds Ground Two time-barred.

Statute of Limitations

As noted in the Court's previous Memorandum Opinion and Order, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a one-year statute of limitations upon all petitions for a writ of habeas corpus under 28 U.S.C. § 2244(d). As applicable to the remaining Ground for relief, under subsection § 2244(d)(1)(D), the start date for that one year is "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."

Respondent notes (and the Court agrees) that the Petition did not identify a specific date on which he discovered the 2011 Michigan State Police ballistics report. *See* Doc. 14, at 7 (stating he "did not learn of this crucial information until 2019"). Nor does he do so in his Reply. *See* Doc. 20, at 2 (stating he became aware of news article about the Michigan States Police

7

investigation into the Detroit Police Department Crime Lab in "Spring of 2019"); *id.* (stating the Wayne County Prosecutor's office also "contacted him directly in 2019, stating that due to the recent news article, exposing the errors of their laboratory, a new round of testing was being performed").[5]

Regardless of the precise date on which Petitioner could have discovered the claim, he *had* certainly discovered it by the date of his post-conviction relief filing: May 10, 2019. Respondent contends that, even using this as the due diligence discovery date, Ground Two of the Petition remains untimely. The Court agrees.

*Statutory Tolling*

Assuming the statute of limitations began on May 10, 2019, it also immediately tolled pursuant to Petitioner's post-conviction relief filing. *See* 28 U.S.C. § 2244(d)(2) ("The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.").

The trial court ruled on Petitioner's motion on March 15, 2021. (Doc. 11-17, at 138-43). Under Michigan court rules, Petitioner had six months to appeal this determination. Mich. Ct. R. 7.205(A)(2)(a). The statute of limitations remained tolled during this six-month period, even though Petitioner did not file an appeal. *See Holbrook v. Curtin*, 833 F.3d 612, 619 (6th Cir. 2016). That six-month period expired on September 15, 2021, and the statute of limitations – which had been paused since its inception – began to run. Petitioner's one-year statute of limitations expired one year later, on September 15, 2022, unless there is another basis for tolling.

---

5. As Respondent also identifies, Petitioner similarly did not identify a specific date in his state court motion for relief from judgment. *See* Doc. 11-9.

Petitioner's two subsequent motions – a motion in the trial court to reissue the denial of the motion for relief from judgment (Doc. 11-13) and a motion in the appellate court to file a delayed application for leave to appeal (Doc. 11-17, at 2-3) – which the appellate court found untimely (Doc. 11-17, at 1), do not provide a basis for statutory tolling. *See Artuz v. Bennett*, 531 U.S. 4, 8 (2000) (a motion is only "properly filed" if its "delivery and acceptance are in compliance with the applicable laws and rules governing filings" which "usually prescribe, for example . . . the time limits upon its delivery") (emphasis omitted);[6] *see also* 28 U.S.C. § 2244(d)(2) (tolling only available for "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim").[7]

The Petition, filed September 6, 2023 – 356 days after the statute of limitations expired on September 15, 2022 – is thus untimely absent equitable tolling.

*Equitable Tolling*

Petitioner seemingly argues equitable tolling renders his Petition timely. *See* Doc. 20, at 3-5. In support, he cites: (1) trial counsel's failure to inform him of the newly discovered information; (2) lack of access to the prison library due to the COVID-19 pandemic; and (3) his diligence in pursuing relief. *See id.* In his original response to Respondent's motion to dismiss, Petitioner also cited: (1) a COVID-19 infection in November 2021; (2) a February 2022 "notice

---

6. A federal habeas court does not function as an additional state appellate court for review of state-court decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988). As such, the Court must defer to the Michigan court's finding regarding whether Petitioner's application for leave to appeal was timely filed because "[f]ederal courts . . . defer to a state court's judgment on issues of state law and, more particularly, on issues of state procedural law." *Vroman v. Brigano*, 346 F.3d 598, 603 (6th Cir. 2003) (quoting *Israfil v. Russell*, 276 F.3d 768, 771 (6th Cir. 2001)) (citing *Godfrey v. Beightler*, 54 F. App'x 431, 433 (6th Cir. 2002)).

7. Even if Petitioner's motion in the trial court to reissue the denial of the motion for relief from judgment (Doc. 11-13) could statutorily toll the period of limitation during the time it was under consideration (36 days), it would not suffice to toll the period long enough to render the Petition timely.

of extension of filing" pursuant to Michigan Supreme Court Order 2022-2; (3) COVID-19 lockdown protocols depriving him of access to the law library. *See* Doc. 14, at 8-10.

A petitioner is entitled to equitable tolling if he shows "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). Requests to equitably toll a statute of limitations are "granted sparingly" and are evaluated on "a case-by-case basis, with the petitioner having the 'ultimate burden of persuading the court that he or she is entitled to equitable tolling.'" *Keeling v. Warden*, 673 F.3d 452, 462 (6th Cir. 2012) (quoting *Ata v. Scutt*, 662 F.3d 736, 741 (6th Cir. 2011)). Additionally, the AEDPA statute of limitations may be subject to equitable tolling through a "credible claim of actual innocence." *Souter v. Jones*, 395 F.3d 577, 589-90 (6th Cir. 2005); *see also Schlup v. Delo*, 513 U.S. 298, 316 (1995). The Sixth Circuit has cautioned, however, that "[a]bsent compelling equitable considerations, a court should not extend limitations by even a single day." *Jurado v. Burt*, 337 F.3d 638, 642 (6th Cir. 2003) (quoting *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 561 (6th Cir. 2000)).

First, Petitioner's reliance on trial counsel's failure to inform Petitioner of the newly-discovered ballistics evidence may not serve as a basis for tolling the statute of limitations *beyond* the later start date already afforded by § 2244(d)(1)(D). This is so because operation of § 2244(d)(1)(D) already extends the start of the statute of limitations to "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." Events prior to the start of the statute of limitations cannot serve to toll it.

10

Second, courts have found that a lack of understanding of the law or lack of access to a prison law library is not generally a basis for equitable tolling. *See Hall v. Warden*, 662 F.3d 745, 750-51 (6th Cir. 2011) (rejecting petitioner's argument that he was entitled to equitable tolling due to a lack of access to transcripts, his *pro se* status, and limited law library access); *Allen v. Yukins*, 366 F.3d 396, 403 (6th Cir. 2004) ("[I]gnorance of the law alone is not sufficient to warrant equitable tolling.") (quoting *Rose v. Dole,* 945 F.2d 1331, 1335 (6th Cir. 1991)). Additionally, while the pandemic itself was indeed extraordinary, "general allegations of . . . lack of access to legal materials [is] not [an] exceptional circumstance[ ] warranting equitable tolling, especially where a petitioner does not sufficiently explain why the circumstances he describes prevented him from timely filing a habeas petition." *United States v. West*, 578 F. Supp. 3d 962, 967 (N.D. Ohio 2022) (quoting *Andrews v. United States*, 2017 WL 6376401, at *2 (6th Cir. 2017)). "The bottom line is that the COVID-19 pandemic does not automatically warrant equitable tolling for a petitioner who seeks it on that basis. The petitioner must establish that he was pursuing his rights diligently *and* that the COVID-19 pandemic specifically prevented him from filing his motion." *Id.* (citation modified). As the Sixth Circuit in *Salyers v. Robey* determined:

> Salyers argues that he is entitled to equitable tolling based on various medical issues, prison transfers, and the effects of the COVID-19 pandemic, including prison lockdowns and staff shortages that limited his access to a law library, legal aides, and legal materials. Reasonable jurists would not debate the district court's determination that Salyers failed to establish entitlement to equitable tolling because his arguments do not show that the difficulties he faced were significant enough to prevent him from filing a timely federal petition. *See Jones v. United States*, 689 F.3d 621, 627 (6th Cir. 2012) (noting that limited access to a law library generally does not give rise to equitable tolling); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 464 (6th Cir. 2012) (noting that a petitioner's pro se status and lack of knowledge of the law are insufficient to warrant equitable tolling).

2022 WL 19575893, at *2 (6th Cir).

11

The same is true here. Petitioner's assertion of entitlement to equitable tolling based on the effects of the pandemic lacks sufficient detail to establish extraordinary circumstances. He simply references "being infected with COVID-19 and subjugated to both Federally mandated 'Shelter in Place' directives, and the MDOC's state mandated Lock-down protocols, which were not under his control, thus depriving him of access to the law library and legal assistance to meet the state and federal deadline court rules." (Doc. 14, at 8-9); *see also* Doc. 20, at 3 ("due to the COVID-19 pandemic lockdown and protocols imposed upon him by the MDOC, he was unable to file any timely briefs, motions or pleadings, during that period."). He does not, however, explain how those conditions specifically precluded him from preparing or filing his petition before the statutory deadline.[8] Petitioner has not established that the pandemic and its impacts on him rise to the level of an extraordinary circumstance justifying equitable tolling here.

Third, Petitioner cites a February 7, 2022, "notice" for an extension of time to file his appeal pursuant to Michigan Supreme Court Administrative Order No. 2022-2. (Doc. 14, at 8). As Respondent points out, first, there is no indication this request was granted, as it appears in the record only as an exhibit to Petitioner's September 6, 2022, delayed application for leave to appeal. *See* Doc. 11-17, at 104. Second, the record supports the conclusion that such requested extension as not granted, because the Michigan Court of Appeals ultimately dismissed Petitioner's appeal as untimely. *Id.* at 1. And third, the referenced administrative order stated "[t]he tolling period established by this order shall expire on March 1, 2022, unless it is extended by further order of the Court." Mich. Sup. Ct. Admin. Order 2022-2. Petitioner did not file his

---

8. The only date Petitioner provides is that he was infected with COVID-19 "in November 2021." (Doc. 14, at 8). He does not explain how this prevented him from timely filing his habeas petition on or before September 15, 2022, over ten months later.

application for a delayed appeal until September 2022, over six months later. This does not provide a basis for equitable tolling of the federal statute of limitations.

And, beneath it all, Petitioner's efforts in state court to seek extensions do not bear on his federal habeas deadline. Pursuant to § 2254(d)(1)(D), Petitioner is presumed to know that his one-year habeas statute of limitations ran from the date on which he could have discovered the new evidence through due diligence. To the extent Petitioner misunderstood how his state court filings would (or would not) toll his federal statute of limitations, it is again well settled that a petitioner's "*pro se* status and lack of knowledge of the law are not sufficient to constitute an extraordinary circumstance and to excuse his late filing." *Keeling*, 673 F.3d at 462. Specifically, misunderstandings of the law surrounding the operation of the statute of limitations are not a basis for equitable tolling. *See, e.g.*, *Johnson v. United States*, 457 F. App'x 462, 470-71 (6th Cir. 2012) (petitioner's confusion and misunderstanding of case law concerning the one-year statute of limitations under the AEDPA did not provide grounds for equitable tolling); *Moore v. United States*, 438 F. App'x 445, 449 (6th Cir. 2011) (citing, *inter alia*, *Johnson v. United States*, 544 U.S. 295, 311 (2005) (ignorance of the law does not provide grounds for equitably tolling the statute of limitations)); *Hansberry v. United States*, 2023 WL 1432037, at *2 (6th Cir.) (noting *pro se* petitioner's "misunderstanding of the applicable procedural rules was not an extraordinary circumstance" warranting equitable tolling); *see also Jurado*, 227 F.3d at 644-45 (counsel's misunderstanding of statutory tolling not a basis for equitable tolling).

Petitioner has failed to demonstrate an extraordinary circumstance to justify tolling the statute of limitations for the 356 days between September 15, 2022, when it otherwise expired, and September 6, 2023, when he filed his habeas petition.

*Actual Innocence*

Respondent further contends Petitioner cannot demonstrate an entitlement to equitable tolling based on actual innocence.

The statute of limitations in 28 U.S.C. § 2244(d)(1) may be equitably tolled when a habeas petitioner makes a credible claim of actual innocence based on new, reliable evidence. *See McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). This exception requires a petitioner to show that "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Id.* at 399 (quoting *Schlup*, 513 U.S. at 327). If a petitioner meets this burden, he may belatedly file his underlying federal habeas claim. *See id.* at 400-01.[9]

The standard for establishing a credible claim of actual innocence is a stringent one. To make out a credible claim of actual innocence, a petitioner is required to present new, reliable evidence—exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was unknown or unavailable at the time of his trial. *Schlup*, 513 U.S. at 324. Actual innocence is an extremely narrow exception and claims of actual innocence are rarely successful. *Id.*; *Gibbs*, 655 F.3d at 477.

Further, "'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998); *Schlup*, 513 U.S. at 321.

> This means that a petitioner may not pass through the equitable gateway by simply undermining the state's case. Rather, he must demonstrate that he *factually* did not commit the crime. Of course, dismantling the state's case is *relevant* and *helpful* to the petitioner because it leaves a vacuum to be filled by an exonerative explanation; but it is not sufficient in and of itself.

---

9. A claim of actual innocence is not itself a freestanding claim under the United States Constitution. It is only a gateway through which a habeas petitioner must pass to have his otherwise barred federal constitutional claim considered on the merits. *Herrera v. Collins*, 506 U.S. 390, 404 (1993); *Gibbs v. United States*, 655 F.3d 473, 477 (6th Cir. 2011).

*Hubbard v. Rewerts*, 98 F.4th 736, 743 (6th Cir. 2024). The new evidence "need not *conclusively prove* his exoneration to make the gateway showing, but it must, at minimum, go towards his innocence." *Id.* at 747.

If a habeas petitioner is able to present new, reliable, exculpatory evidence to support a credible claim of actual (factual) innocence, the Court "must not limit [its] analysis to such evidence." *Id.* at 743; *House v. Bell*, 547 U.S. 518, 537 (2006). The court must instead look at the entire record, "old and new" evidence, without regard to its admissibility, before determining whether a petitioner has credibly shown actual innocence sufficient to overcome a habeas procedural barrier. *House*, 547 U.S. at 538. Based on the entire record, the court must then determine whether "no reasonable juror would find [the petitioner] guilty." *Id.*

After reviewing the record, this Court finds Petitioner has not presented a credible claim of actual innocence. Petitioner is required to present new reliable evidence and facts that raise sufficient doubt about his guilt to undermine confidence in the outcome of the criminal proceeding in the Michigan state courts. *Schlup*, 513 U.S. at 317; *Souter*, 395 F.3d at 590. He has failed to do so.

At trial, evidence was presented that all five recovered bullets were fired from the same weapon. *See* Doc. 11-5, at 139 (January 11, 2005, trial transcript; testimony of Detroit Police Officer David Pauch). On December 5, 2011, the Michigan State Police crime lab reexamined the five recovered fired bullets from Petitioner's case. *See* Doc. 11-17, at 126-27. The result was:

> Item #'s 1 through 5 are consistent with being .38 class (.38/.357) caliber fired bullets exhibiting class rifling specifications of 8 lands and grooves with a right twist. These specifications are characteristic of .38 Special caliber firearms manufactured by Arminius, Burgo, Charter Arms, Cheyenne, Dickson, EIG, Liberty Arms, Omega, PIC, RG Ind., Rohm and Ruger; and .357 Magnum caliber firearms manufactured by Charter Arms, Rohm, Ruger and Weihrauch. However, no suspect firearm should be overlooked.

15

> Upon microscopic examination, item #'s 1 and 4 were identified as having been fired from the same firearm. Item #'s 2, 3 and 5 lacked sufficient individual matching characteristic for a positive identification.

*Id.* at 126.

True, the new testing results are different than the old. But the new report did not conclude the three recovered bullets came from a different firearm. Rather, it merely found they lacked sufficient characteristics to prove a match. More importantly, nothing about the retest exonerates Petitioner. The trial evidence demonstrated the victim was shot at least seven times. *Magee*, 2006 WL 2739358, at *2. Only five bullets were recovered. *Id.* The jury was instructed as to aiding and abetting. *Id.* As the state court explained:

> [T]here was evidence that defendant participated in the offense along with codefendants Terrence Gaines and Tavaree Clark, and that defendant and Gaines both entered the victim's house intending to rob him while Clark stood by outside. Although Gaines testified that defendant shot the victim, the jury could have concluded that Gaines shot the victim and that he was attempting to blame defendant for the shooting . . . [T]he evidence did not exclude the possibility that both Gaines and defendant shot the victim. This evidence supported an aiding and abetting instruction.

*Id.* That is, the jury could still convict Petitioner even if they found he was not the one to shoot the victim. The new ballistics evidence does not demonstrate actual, factual innocence. And even if this evidence were to be considered, based on the entire record, the Court cannot conclude that "no reasonable juror would find [the petitioner] guilty." *House*, 547 U.S. at 538.

Because the Petition is untimely and Petitioner has not demonstrated either an entitlement to equitable tolling or actual innocence to excuse his untimely filing, Ground Two of the Petition is dismissed as time-barred.

Discovery / Evidentiary Hearing

In his filings, Petitioner also seeks discovery and an evidentiary hearing. *See* Doc. 1, at 44-48; Doc. 20, at 5-7. Unlike typical civil litigants, "[h]abeas petitioners have no right to

16

automatic discovery." *Johnson v. Mitchell*, 585 F.3d 923, 934 (6th Cir. 2009) (quoting *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001)). The rules authorize discovery in habeas corpus proceedings only "for good cause." Rule 6(a) of the Rules Governing Section 2254 Cases. This means discovery is appropriate "only 'where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief.'" *Williams v. Bagley*, 380 F.3d 932, 974 (6th Cir. 2004) (quoting *Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997)).

Petitioner contends discovery and an evidentiary hearing is required to evaluate the newly-discovered evidence and his claims of ineffective assistance of counsel. *See* Doc. 1, at 44-48; Doc. 20, at 5-7. Because the Court has determined the Petition is time-barred, Petitioner cannot show reason to believe further factual development will demonstrate he is entitled to relief. He is not entitled to discovery or an evidentiary hearing.

Motion to Appoint Counsel

After he filed his Reply/Traverse, Petitioner filed a Motion to Appoint Counsel. (Doc. 21). Because the Petition is dismissed as time-barred, Petitioner's Motion is denied as moot.

Certificate of Appealability

An appeal may not be taken from a final order in a habeas case unless a certificate of appealability is issued. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). When the claim is denied on procedural grounds, without consideration of the merits of the claim, the petitioner must show both that reasonable jurists would find it debatable that the petition states a valid constitutional claim and that they would "find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a

reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.*; *see also Dufresne v. Palmer*, 876 F.3d 248, 253 (6th Cir. 2017) (per curiam) ("If the petition was denied on procedural grounds, the petitioner must show, 'at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'") (quoting *Slack*, 529 U.S. at 484).

All three grounds of Petitioner's Petition are plainly time-barred, and no reasonable jurist could conclude that dismissal is in error or that Petitioner should be allowed to proceed further.

### CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that Ground Two of the Petition (Doc. 1) be, and the same hereby is, DISMISSED, as untimely; and it is

FURTHER ORDERED Petitioner's Motion to Appoint Counsel (Doc. 21) be, and the same hereby is, DENIED as moot; and it is

FURTHER ORDERED that, no certificate of appealability shall issue as to this Order or the Court's prior Order granting in part and denying in part Respondent's Motion to Dismiss (Doc. 17). 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b); Rule 11 of Rules Governing Section 2254 Cases. And the Court

FURTHER CERTIFIES that an appeal from this decision could not be taken in good faith. 28 U.S.C. § 1915(a)(3).

s/ *James R. Knepp II*
UNITED STATES DISTRICT JUDGE

Dated: April 13, 2026

18